## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,      )
          )
          **Plaintiff,**      )
          )     **CRIMINAL ACTION**
**v.**          )
          )     **No. 08-20160-02-KHV**
**MARTIN ARRENDONDO-VALENZUELA,**      )
          )
          **Defendant.**      )
_____)

## MEMORANDUM AND ORDER

On November 12, 2009, the Court sentenced defendant to 360 months in prison. This matter is before the Court on defendant's pro se <u>Motion For Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A)(i) (Compassionate Release)</u> (Doc. #509) filed October 30, 2020, which seeks release based on the Coronavirus Disease-2019 ("COVID-19") pandemic. On November 2, 2020, pursuant to District of Kansas Standing Order No. 20-8, the Office of the Federal Public Defender notified the Court that it does not intend to enter an appearance to represent defendant. The government opposes defendant's motions. <u>See</u> <u>Government's Response To Defendant's Motions For Compassionate Release</u> (Doc. #520) filed November 16, 2020. Defendant did not file a reply. For reasons stated below, the Court dismisses defendant's motion.

## Factual Background

On April 29, 2009, defendant pled guilty to conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii) and 846. <u>See</u> <u>Plea Agreement</u> ¶ 1, attached to <u>Petition To Enter Plea Of Guilty And Order Entering Plea</u> (Doc. #107). Because defendant pled guilty to an offense under 21 U.S.C. § 841(b)(1)(A), he faced a statutory range of 10 years to life in prison. <u>See</u> 21 U.S.C.

§ 841(b)(1)(A)(viii).   The Court attributed 78.93 kilograms of methamphetamine to defendant for a base offense level of 38 under the United States Sentencing Guidelines ("U.S.S.G.") § 2D1.1(c)(1).   See Presentence Investigation Report ("PSR") (Doc. #199) filed October 29, 2009, ¶ 59.   The Court applied a two-level enhancement because defendant possessed a firearm, a two-level enhancement because the offense involved importation of methamphetamine from Mexico and a three-level enhancement because of his role in the offense.   Id., ¶¶ 60–61, 63.   The Court granted defendant a three-level reduction for acceptance of responsibility.   Id., ¶¶ 66–67. Based on a total offense level of 42 and a criminal history category I, defendant's guideline range was 360 months to life in prison.   Id., ¶ 95.

On November 12, 2009, the Court sentenced defendant to 360 months in prison. Defendant appealed.   On May 27, 2010, the Tenth Circuit dismissed defendant's appeal based on waiver of his appeal rights in the plea agreement.   See Order And Judgment (Doc. #306).

Defendant currently is confined at FCI Ray Brook, a BOP facility in Ray Brook, New York. FCI Ray Brook houses 728 inmates.   See FCI Ray Brook, https://www.bop.gov/locations/ institutions/rbk (last visited Dec. 3, 2020).   As of December 21, 2020, 31 inmates and ten staff members at FCI Ray Brook had tested positive for COVID-19. See COVID-19 Cases, https://www.bop.gov/coronavirus (last visited Dec. 21, 2020).   See id.   Some 14 of the 31 inmates and all of the staff members have recovered.   See id.   No inmates or staff members have died from COVID-19.   See id.

Defendant is 38 years old.   Defendant has three children including a daughter who is 18 years old.   Since birth, defendant's daughter has suffered from spinal meningitis.   She requires assistance to walk and will need ongoing medical treatment for the rest of her life.

Defendant requests compassionate release based on COVID-19 and the failing health of his mother, who is the caretaker for his disabled daughter in Mexico.   With good time credit, defendant's projected release date is December 20, 2034.   Defendant is a citizen of Mexico and is subject to a detainer from the Bureau of Immigration and Customs Enforcement ("ICE").

### Analysis

A federal district court may modify a defendant's sentence only where Congress has expressly authorized it to do so.   See 18 U.S.C. § 3582(b)–(c); United States v. Blackwell, 81 F.3d 945, 947 (10th Cir. 1996).   Congress has set forth only three limited circumstances in which a court may modify a sentence: (1) upon motion of the BOP Director or defendant under Section 3582(c)(1)(A); (2) when "expressly permitted by statute or by Rule 35" of the Federal Rules of Criminal Procedure; and (3) when defendant has been sentenced "based on a sentencing range that has subsequently been lowered by the Sentencing Commission."   18 U.S.C. § 3582(c). Under the First Step Act of 2018, Pub. L. No. 115-391 (S. 756), 132 Stat. 5194, the Court may order compassionate release for "extraordinary and compelling reasons."     18 U.S.C. § 3582(c)(1)(A)(i).   For reasons stated below, the Court lacks jurisdiction because (1) defendant has not exhausted administrative remedies and (2) he has not established extraordinary and compelling reasons for his release.

## I.       Exhaustion Of Administrative Remedies

The Court may entertain requests for compassionate release only upon a motion of the BOP or of defendant after he submits a request to BOP and the earlier of (1) when he "fully exhaust[s] all administrative rights to appeal" or (2) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility."   18 U.S.C. § 3582(c)(1)(A).   As to the second

alternative, a "lapse" refers to the failure of the warden to respond to defendant's request.   See United States v. Abdeljawad, No. 15-CR-3394 WJ, 2020 WL 4016051, at *2 (D.N.M. July 16, 2020) (in context, "lapse of 30 days" refers to complete absence of response during that period); United States v. Saenz, No. 97CR2106-JLS, 2020 WL 2767558, at *2 (S.D. Cal. May 28, 2020) (no "lapse" because warden acted on defendant's request); United States v. Miller, 2020 WL 113349, at *2 (D. Idaho Jan. 8, 2020) ("lapse" means warden must fail to act on request for period of 30 days); see also *lapse*, Black's Law Dictionary 885 (7th ed. 1999) (lapse is "termination of a right or privilege because of a failure to exercise it within some time limit or because a contingency has occurred or not occurred").   In other words, if the warden responds to a request within 30 days, defendant must fully exhaust available administrative appeals before filing a motion in district court.   See United States v. Valenzuela, No. 15-CR-01460-WJ, 2020 WL 5439803, at *2 (D.N.M. Sept. 10, 2020) (court lacks jurisdiction until inmate appeals warden denial through administrative appeal process and receives final agency determination); United States v. Van Sickle, No. CR18-0250JLR, 2020 WL 3962225, at *3 (W.D. Wash. July 13, 2020) (despite urgency created by COVID-19, defendant must exhaust administrative remedies within BOP before filing motion in court).   But see United States v. Harris, 812 F. App'x 106, 107 (3d Cir. 2020) (statute allows defendant to file motion 30 days after warden receives request); United States v. Alam, 960 F.3d 831, 834 (6th Cir. 2020) ("Prisoners who seek compassionate release have the option to take their claim to federal court within 30 days, no matter the appeals available to them.").

The administrative exhaustion requirement in Section 3582(c)(1)(A) is jurisdictional. United States v. Scott, No. 16-10003-02-EFM, 2020 WL 5513616, at *1 (D. Kan. Sept. 14, 2020); see United States v. Read-Forbes, 454 F. Supp. 3d 1113, 1116–17 (D. Kan. 2020) (jurisdictional

-4-

based on "text, context, and relevant historical treatment" of Section 3582(c)) (quoting Musacchio v. United States, 136 S. Ct. 709, 717 (2016)).   Defendant alleges that he has satisfied the exhaustion prerequisite because the warden denied his written request for compassionate release. Motion For Sentence Reduction (Doc. #509) at 2–3.   The record reflects that defendant submitted a request on April 26, 2020, which the warden denied on May 20, 2020.   Id. at 3.   Because defendant did not appeal the warden's denial of his request, he has not fully exhausted all administrative appeal rights.   Accordingly, the Court lacks jurisdiction to consider his motion for compassionate release.

Even if the Court construed the administrative exhaustion requirement of Section 3582(c)(1)(A) as a claims-processing rule rather than a jurisdictional limitation, the statutory rule would still bar defendant's motion at this time.   See Read-Forbes, 454 F. Supp. 3d at 1117.   In contrast with judicially created exhaustion requirements, the Court lacks discretion to excuse defendant's failure to comply with a mandatory statutory requirement to exhaust administrative remedies.   Malouf v. SEC, 933 F.3d 1248, 1256 (10th Cir. 2019), cert. denied, 2020 WL 1124531 (U.S. Mar. 9, 2020); see Ross v. Blake, 136 S. Ct. 1850, 1857 (2016) (exhaustion statutes like Prison Litigation Reform Act of 1995 establish mandatory exhaustion regimes, foreclosing judicial discretion).   The COVID-19 pandemic is no exception.   See Alam, 960 F.3d at 831, 833–36 (enforcing mandatory exhaustion requirement despite seriousness of COVID-19 and its spread in prisons); United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) (despite COVID-19 pandemic, failure to exhaust presents "glaring roadblock" foreclosing compassionate release at this point).

Whether the exhaustion requirement is jurisdictional or a claims-processing rule, sound

policy reasons support the requirement that defendant must first present to the BOP an appeal of the denial of his request for a reduced sentence.   The exhaustion requirement helps prevent premature claims and ensures that the agency that possesses the most expertise is given the first shot at resolving defendant's request.   See Forest Guardians v. U.S. Forest Serv., 641 F.3d 423, 431 (10th Cir. 2011); see also Raia, 954 F.3d at 597 ("Given BOP's shared desire for a safe and healthy prison environment, . . . strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance.").   Because defendant is in BOP custody, the BOP is in a better position to initially determine his medical needs, his specific risk of COVID-19, the risk to inmates generally at FCI Ray Brook, the risk to the public if he is released and whether his release plan is adequate.   See United States v. Epstein, No. CR 14-287-FLW, 2020 WL 1808616, at *4 (D.N.J. Apr. 9, 2020); see also Alam, 960 F.3d at 835 (preventing prisoners seeking relief because of COVID-19 from charging straight to federal court helps prison administrators prioritize most urgent claims and ensure that they can investigate gravity of conditions supporting compassionate release and likelihood that conditions will persist).   Likewise, the BOP is in a better position to coordinate any request for relief under Section 3582(c)(1)(A) with the exercise of its discretion to place a prisoner in home confinement under 18 U.S.C. § 3624(c)(2).

## II.     Extraordinary And Compelling Reasons For Release

Even if defendant had exhausted administrative remedies, he has not shown "extraordinary and compelling reasons" for release.   Under the compassionate release statute, after considering the applicable factors set forth in Section 3553(a), the Court may grant relief if defendant establishes that (1) "extraordinary and compelling reasons" warrant a reduced sentence and (2) a reduced sentence is "consistent with applicable policy statements issued by the Sentencing

Commission."   18 U.S.C. § 3582(c)(1)(A).   Congress specifically authorized the Sentencing Commission to issue policy statements defining "what should be considered extraordinary and compelling reasons for [a] sentence reduction, including the criteria to be applied."   United States v. Saldana, 807 F. App'x 816, 819 (10th Cir. 2020) (quoting 28 U.S.C. § 994(t)).

The Sentencing Commission has identified four reasons that may constitute grounds for compassionate release: (1) defendant's medical condition; (2) defendant's age; (3) defendant's family circumstances; and (4) as determined by the Director of the BOP, an "extraordinary and compelling reason other than, or in combination with," the first three categories.   U.S.S.G. § 1B1.13, Reduction In Term Of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement), cmt. n.1 (Nov. 2018).[1]   In addition, the policy statement requires that before granting

---

[1]   Application Note 1 provides as follows:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

    (A)   Medical Condition of the Defendant.—
        (i)   The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory).   A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required.   Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

        (ii)   The defendant is—
           (I)   suffering from a serious physical or medical condition,
           (II)   suffering from a serious functional or cognitive impairment,
           or
           (III)   experiencing deteriorating physical or mental health because of the aging process,
        that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(continued . . .)

-7-

relief, the Court must find that defendant "is not a danger to the safety of any other person or to the community."   U.S.S.G. § 1B1.13(2) (citing 18 U.S.C. § 3142(g)).   In December of 2018, the First Step Act amended Section 3582(c)(1)(A) to permit defendants (rather than only the BOP) to file motions for compassionate release.   The Sentencing Commission's policy statement, which was effective November 1, 2018, nonetheless remains the relevant policy statement in determining whether "extraordinary and compelling reasons" warrant defendant's release.   See Saldana, 807 F. App'x at 819 (applying policy statement effective November 1, 2018 to defense motion under Section 3582(c)(1)(A)); see also United States v. Pinson, No. 20-6050, 2020 WL 7053771, at *3 (10th Cir. Dec. 2, 2020) (while defendant argued below that policy statement no longer binds federal courts, Tenth Circuit continues to refer to it in deciding challenges related to § 3582(c)(1)). Unless the grounds for resentencing fall within one of the specific categories that Congress has

---

[1](. . . continued)

(B)  Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C)  Family Circumstances.—
(i)  The death or incapacitation of the caregiver of the defendant's minor child or minor children.
(ii)  The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D)  Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13, cmt. n.1 (Nov. 2018).

authorized under Section 3582(c), the Court lacks jurisdiction to consider defendant's request. See Saldana, 807 F. App'x at 819; United States v. Brown, 556 F.3d 1108, 1113 (10th Cir. 2009).

Here, defendant seeks compassionate release based on COVID-19 and the failing health of his mother, who cares for his disabled daughter in Mexico. Subsection (A) of the Section 1B1.13 commentary does not apply because defendant has not identified any medical conditions that limit his ability to provide self-care within the prison environment. Subsection (B) also does not apply because defendant is 38 years old. See U.S.S.G. § 1B1.13, cmt. n.1(B) (defendant must be at least 65 years old to qualify for relief based on age).

Under subsection (C) of the Section 1B1.13 commentary, exceptional and compelling reasons include (i) the "death or incapacitation of the caregiver" of a minor child or minor children and (ii) the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." Id., cmt. n.1(C). Defendant has not satisfied subsection (i) because his daughter is no longer a minor and his mother—his daughter's caregiver—is living and not incapacitated. Indeed, it appears that defendant's mother and stepfather work strenuous jobs but lack the financial means to pay for his daughter's medical care. See Email From Elizabeth Salazar (family friend) To BOP dated June 1, 2020 (Doc. #509-3) ("The grandparents work in vegetation fields and have a hard time to provide for a special needs child;" "*should these elderly grandparents suffer any health issues* at their age, or heat stroke in their line of work and or contract COVID-19, his disabled daughter will be faced to be alone and without care") (emphasis added); Translated Letter From Teresa Pena (Doc. #509-4) at 4 (injections are costly and sometimes grandmother cannot take defendant's daughter to doctor visits; defendant's daughter feels that her father is better suited to assist her, "work and help

pay for [] therapies, as her grandmother at times is unable to").   Defendant also has not satisfied subsection (ii) because it applies only to the "incapacitation of the defendant's spouse or registered partner," not a daughter.

Because defendant has not shown that subsections (A), (B) or (C) apply, he must rely on the catchall provision of subsection (D).   Under subsection (D) of the Section 1B1.13 commentary, as determined by the Director of the BOP, release may be appropriate based on other "extraordinary and compelling reason[s]," by themselves or in combination with the reasons described in subdivisions (A) through (C).   U.S.S.G. § 1B1.13, cmt. n.1(D).   To determine whether defendant presents other extraordinary and compelling reasons for release, the BOP has identified several "nonexclusive factors" to consider: defendant's criminal and personal history, the nature of his offense, disciplinary infractions, length of sentence and amount of time served, current age and age at the time of offense and sentencing, release plans and whether release would "minimize the severity of the offense." Saldana, 807 F. App'x at 819 (quoting BOP Program Statement 5050.50 at 12 (2019)).   Where the BOP Program statement is a "permissible construction of the statute," it is entitled to "some deference." Id. (quoting Reno v. Koray, 515 U.S. 50, 61 (1995)).

As explained above, the First Step Act permits defendants (rather than only the BOP) to file motions for compassionate release.   The Sentencing Commission, however, which has lacked a quorum since the First Step Act was enacted in December of 2018, has not amended the Section 1B1.13 commentary which includes the catchall provision for other extraordinary and compelling reasons "[a]s determined by the Director of the BOP."   U.S.S.G. § 1B1.13, cmt. n.1(D).   In an unpublished decision, the Tenth Circuit implicitly recognized that in addition to the

BOP, courts now can make such a determination.  See Saldana, 807 F. App'x at 819–20.[2]   The Court likewise concludes that on a defense motion, it may—independently of the BOP—determine whether defendant has established "other" extraordinary and compelling reasons that warrant a reduced sentence beyond those stated in subsections (A) to (C) of the Section 1B1.13 commentary. U.S.S.G. § 1B1.13, cmt. n.1(D); see United States v. Israel, No. 95-00314-CR, 2020 WL 4362258, at *4 (S.D. Fla. July 29, 2020) (overwhelming majority of courts conclude that after First Step Act, courts may independently determine whether "other" extraordinary and compelling reasons warrant release); see also 28 U.S.C. § 994(t) (Sentencing Commission shall describe what should be considered extraordinary and compelling reasons including criteria to apply and list of specific "examples"); cf. United States v. Gunn, No. 20-1959, 2020 WL 6813995, at *2 (7th Cir. Nov. 20, 2020) (no "applicable" policy statement for inmate motions for compassionate release so district judges must consider only statutory criteria of "extraordinary and compelling reasons"); United States v. Brooker, 976 F.3d 228, 236 (2d Cir. 2020) (because Section 1B1.13 not "applicable" to compassionate release motions brought by defendants, Application Note 1(D) cannot constrain district court discretion to consider whether any reasons extraordinary and compelling).

In the context of compassionate release, "extraordinary" means "exceptional to a very marked extent."  United States v. Baydoun, No. 16-20057, 2020 WL 4282189, at *2 (E.D. Mich.

---

[2]        In Saldana, defendant argued that in determining whether he had established other compelling reasons under the catchall provision of subsection (D), the district court should have considered (1) his post-conviction rehabilitation efforts and (2) post-sentencing case law that would have lowered his sentencing range.  See id.  In affirming the district court's decision to deny defendant's request for a reduced sentence under the catchall provision of subsection (D), the Tenth Circuit implicitly assumed that the district court, rather than the BOP exclusively (as the commentary suggests), can determine whether a defendant has established "other" extraordinary and compelling reasons under the catchall provision.  See id.

July 27, 2020) (quoting *extraordinary*, Webster's Third International Dictionary, Unabridged (2020)).  "Compelling" means "tending to convince . . . by forcefulness of evidence."  Id. (quoting *compelling*, Webster's Third International Dictionary, Unabridged (2020)).  As noted above, BOP Program Statement 5050.50 identifies several "nonexclusive" factors for the Court to consider in determining whether "other" extraordinary and compelling reasons warrant a reduced sentence.  See Saldana, 807 F. App'x at 819.

Here, defendant seeks release because of COVID-19 and the failing health of his mother, who cares for his disabled daughter in Mexico.  Defendant is 38 years old and has no reported health conditions.  The PSR notes that in 2009, defendant reported that he was in good physical health with no history of health problems.  PSR (Doc. #199), ¶ 82.  Defendant has not shown that compared to his transfer to ICE custody and eventual placement in Mexico, he faces a heightened or imminent risk of exposure to COVID-19 at FCI Ray Brook.  See United States v. Wright, No. CR-TDC-17-0388, 2020 WL 2571198, at *3 (D. Md. May 21, 2020) (inmate must show imminent risk of exposure to COVID-19 and high risk for death or serious illness should he or she contract COVID-19 based on age, medical conditions or other factors).  COVID-19 certainly presents a challenge in the prison setting, where inmates generally live in close quarters.  Even so, the risk that COVID-19 may spread at FCI Ray Brook cannot "justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."  Raia, 954 F.3d at 597.  The COVID-19 pandemic alone does not constitute an extraordinary and compelling reason for release.

As to the health of defendant's mother, defendant has not shown that she is unable to care for his disabled adult daughter or that no one else is available to do so.  Since 2009 when the

Court sentenced defendant to 360 months in prison, defendant and his family have understood that his earliest expected release date with good time credit would be in late 2034.   The Court appreciates the physical and economic challenges facing defendant's mother, but such challenges, both individually and collectively with the COVID-19 pandemic, do not constitute extraordinary and compelling reasons for defendant's release.   Likewise, defendant has not established that the nonexclusive factors in BOP Program Statement 5050.50 compel his release.

Even if COVID-19 and the health of defendant's mother were considered "extraordinary and compelling" reasons for release, the Court would deny relief after considering the various factors under 18 U.S.C. § 3553.   At sentencing, the Court considered defendant's assertion that he engaged in criminal conduct because he sought to pay for medical treatment for his disabled daughter in Mexico.   Transcript Of Sentencing (Doc. #290) filed March 17, 2010 at 134–35. Defendant stated that with the proceeds of his criminal conduct, he paid for two surgeries for his daughter.   See id. at 141–43, 147–48.   Defendant argued that with a sentence of 360 months, his daughter would be unable to walk when he was released from prison.   See id. at 142.   While the Court considered defendant's motive in engaging in criminal conduct, along with his daughter's condition, it also noted the destructive impact of methamphetamine on the lives of meth users and family members.   See id. at 145–46.   After balancing the factors under Section 3553(a), the Court imposed a sentence of 360 months—the low end of the guideline range.   See id. at 145–46, 148– 49.

A sentence of time served, or approximately 168 months with good time credit, is inconsistent with the seriousness of defendant's offense, the need for deterrence and the need to protect the public.   In particular, defendant committed a significant drug trafficking offense.   As

part of the offense conduct, defendant was responsible for 78.93 kilograms of methamphetamine. See PSR (Doc. #199), ¶ 59.   He also possessed a firearm and was a manager or supervisor in the criminal activity that involved at least five participants.   Id., ¶¶ 60, 63.   A reduction of defendant's sentence to approximately 168 months would reflect a significant disparity from his current sentence of 360 months, the low end of his guideline range.   On balance, the factors under Section 3553(a) do not support a reduced sentence.

In sum, the COVID-19 pandemic and the health of defendant's mother are not "extraordinary and compelling" reasons that warrant his release under Section 3582(c)(1)(A). Therefore, the Court dismisses defendant's motion for release for lack of jurisdiction.   See Saldana, 807 F. App'x at 818, 820–21 (because district court found that defendant had not established "extraordinary and compelling reasons" for reduced sentence, it should have dismissed motion for lack of jurisdiction).

**IT IS THEREFORE ORDERED** that defendant's Motion For Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A)(i) (Compassionate Release) (Doc. #509) filed October 30, 2020 is **DISMISSED**.

Dated this 21st day of December, 2020 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge

-14-